Aristeu Fontes de OLIVEIRA, Plaintiff,

v.

DELTA MARINE DRILLING CO., Sociedade Comercial Brasileira de Pesquisas Do Supsolo Pelo Metdo Schlumberger, Ltda., Schlumberger Well Services, and Schlumberger Limited, Defendants.

Civ. A. No. H–79–1095.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 11, 1981.

Dixie Smith and Scott Brann, Fulbright & Jaworski, Michael K. Bell and Randy Allen, Clann & Pearson, Houston, Tex., for defendants.

MEMORANDUM AND ORDER

SEALS, District Judge.

Plaintiff filed this action on May 25, 1979, seeking relief under the Jones Act, 46 U.S.C. § 688, and the General Maritime Law of the United States. Basically plaintiff alleges that he sustained personal injuries as a result of an accident occasioned by the negligence of his employer, Defendant Sociedade Comercial Brasileira de Pesquisas Do Supsolo Pelo Metdo Schlumberger, Ltda. (Ltda.), the negligence of Defendant Delta Marine Drilling Co. (Delta), and the unseaworthiness of Delta's vessel, the DELTA NINE. Defendant Delta filed motions for summary judgment or, in the alternative, to dismiss on the grounds that the plaintiff was not a Jones Act seaman and is not entitled to maintain this suit under the Jones Act or the General Maritime Law and, further, that this Court should decline jurisdiction of this action on the basis of *forum non conveniens* because United States statutory and General Maritime Law do not apply.

On October 21, 1981, a hearing was held in open court for the purpose of disposing of Defendant Delta's motions. Having considered the evidence presented by the parties and the oral argument of counsel, as well as the pleadings and supporting briefs filed herein, the Court has concluded that the plaintiff is entitled to maintain his action before this Court. In support of that conclusion, the Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. The Plaintiff is a Brazilian national who has resided in Brazil since birth and who intends to spend the rest of his life in Brazil.

2. At the time of the accident made the basis of this suit, the plaintiff was employed as a geophysical assistant, i. e., a

G. Robert Friedman and Robert A. Chaffin, Friedman & Chaffin, Houston, Tex., for plaintiff.

member of a well logging crew, by Defendant Ltda. which was under contract to Petrobras, the Brazilian national oil company, to provide well logging services for the well being drilled on the date of this accident.

3. Defendant Delta is a Delaware corporation with its principal place of business in Tyler, Texas, and operates in Brazil through its subsidiary, Perbras.

4. Defendant Delta's base of operations is in Tyler, Texas.

5. In order to facilitate the drilling of offshore wells, Defendant Delta owns and operates oceangoing vessels, one of which is the vessel DELTA NINE.

6. The DELTA NINE is registered in Panama and flies the Panamanian flag. Defendant Delta maintains no offices or employees in Panama.

7. The DELTA NINE was originally designed and built to be a cargo vessel. In 1975, the DELTA NINE was converted in Avondale Shipyard in New Orleans, Louisiana, from a cargo vessel to a drilling tender vessel at the request of Defendant Delta. At the time of the accident made the basis of this suit, the DELTA NINE was on its maiden assignment as a tender vessel.

8. The DELTA NINE is oceangoing and is similar to the traditional blue water cargo vessel, capable of plying the high seas. The vessel is self-propelled and moves freely to wherever it can make the greatest profit.

9. On May 26, 1976, plaintiff and other members of the well logging crew left Aracaju, Brazil, by crew boat to perform logging operations on a well being drilled. Although the well was located on a fixed platform, all of the drilling equipment utilized in the operation was provided by the DELTA NINE.

10. The DELTA NINE was moored adjacent to the fixed platform by eight anchors. The entire well logging crew, including the plaintiff, was transferred to the DELTA NINE from the crewboat via crane and attached personnel basket located on the DELTA NINE.

11. Once aboard the DELTA NINE, the plaintiff was required to aid in the unloading of logging equipment from the crew boat. These tools and logging equipment were placed directly upon a ramp connecting the tender vessel DELTA NINE to the fixed platform. This ramp, known in the offshore industry as a "widowmaker," was a means of ingress and egress between the DELTA NINE and the fixed platform.

12. The purpose of the widowmaker was to provide a gangway between the tender vessel and the fixed platform in order to facilitate personnel and equipment movement and to serve as a storage area for tools and equipment used in the well drilling operations.

13. The DELTA NINE's function was to furnish support services to the fixed platform. Necessary services such as the furnishing of electric power, mud pumps, mud tanks, crane services, water and air lines and essential personnel accommodations including eating, drinking and sleeping facilities were provided by the DELTA NINE.

14. The sole mission of the DELTA NINE and her crew was to assist in the drilling and completion of six oil producing wells located on the fixed platform.

15. The plaintiff's duties offshore required him to do geophysical work, which consisted of loading and unloading logging tools and equipment, logging wells, pipe cutting and engine maintenance. This work continuously exposed plaintiff to the hazards of the sea.

16. Because the logging tools were stored on the widowmaker, the plaintiff spent considerable time on the widowmaker retrieving and servicing the tools required for the logging operation.

17. At the time of the accident made the basis of this suit, the plaintiff was engaged in activities which contributed to and were essential to the accomplishment of the DELTA NINE's mission. The well being drilled by Defendant Delta could not have been completed without first being logged by the geophysical crew of which plaintiff was a member.

18. On May 27, 1976, while the plaintiff was gathering tools and organizing equipment on the widowmaker for transfer to the crew boat, the widowmaker collapsed from underneath the plaintiff after one of the bow anchor chains unexplainably broke.

19. As plaintiff was falling into the sea, the widowmaker struck him. The tool box and other equipment which had been stored on the widowmaker fell on the plaintiff as he plunged into the water.

20. Plaintiff remained in the sea for over 30 minutes until he was rescued and taken aboard the DELTA NINE. Sea and weather conditions at the time of the accident were normal.

21. Once the DELTA NINE was moored next to the fixed platform off the coast of Brazil an American toolpusher in the employ of Defendant Delta/Perbras, Dale Clements, took over control of the operation of the DELTA NINE and the drilling operations conducted by Defendant Delta on the fixed platform.

22. Mr. Clements, as well as the other Americans employed by Defendant Delta on the vessel, received his job training in the United States.

23. The supervisors of the drilling crews were American and answered directly to Mr. Clements. The top skilled and supervisory positions at all times were held by Americans on both 12 hour shifts. Mr. Clements was in charge of the safety of both the fixed platform and the DELTA NINE.

24. The complete operation and ultimate control of the work on the fixed platform and the DELTA NINE was in the hands of Americans employed by Defendant Delta.

25. The DELTA NINE could not operate without receiving replacement parts and equipment from the United States and without highly skilled American personnel.

26. The base of operations of the DELTA NINE at the time of the accident made the basis of this suit was in the United States.

27. The plaintiff was injured while working in support of the mission of the DELTA NINE.

28. The plaintiff has chosen to bring this litigation in this American forum where the Defendant Delta is conducting substantial business operations. Revenue from the operation of the DELTA NINE finds its way directly back to Texas for the benefit of American citizens.

29. The Court finds that substantial and significant contacts exist between this American forum and the accident in question.

30. Substantial daily operational control of the DELTA NINE and the drilling operations by Defendant Delta from its headquarters in Tyler, Texas, further warrant a finding of substantial contacts.

31. The key liability witnesses in this case, with the exception of the plaintiff, are the American crew members in the authoritative and supervisory positions on the DELTA NINE. These Americans reside in the United States and cannot be compelled to attend as witnesses in foreign forums.

32. Sources of proof, including corporate records, accident reports, and insurance agreements of Defendant Delta are located in Tyler, Texas, and would not be compulsorily available in Brazil.

33. Plaintiff has a definite and practical private interest in maintaining this litigation in America where this Court has both in personam and subject matter jurisdiction of Defendant Delta and where Defendant Delta maintains reachable assets which could satisfy a judgment in plaintiff's favor.

34. Defendant Delta has failed to show that any remedy available to the plaintiff in Brazil is adequate and certain.

35. Defendant Delta has no grounds to claim vexation or harassment by plaintiff's choice of forum.

36. Any finding of fact deemed to be a conclusion of law is hereby adopted as such.

## CONCLUSIONS OF LAW

1. This is a case brought under the terms of the Jones Act, 46 U.S.C. § 688, and

the General Maritime Law of the United States, asserting the negligence of the plaintiff's employer and Defendant Delta, as well as the unseaworthiness of the vessel DELTA NINE.

■ 2. Plaintiff's burden of proof to overcome Defendant Delta's motion to dismiss is to show by prima facie evidence the existence of substantial contacts between the United States and the accident made the basis of this lawsuit.

■ 3. *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), established seven factors as being relevant in deciding the choice of law issue. These factors are:

(a) The place of wrongful act;

(b) The law of the ship's flag;

(c) The allegiance of the Defendant vessel owner;

(d) The allegiance of the injured seaman;

(e) The law of the forum;

(f) The inaccessibility of a foreign forum; and

(g) The place of employment contract.

The *Lauritzen* choice of law test is not a mechanical one. Substantiality of contacts is to be determined on an absolute scale and not by comparing or balancing the presence of certain contacts with the absence of others.

4. *Hellenic Lines Limited v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), added as an eighth factor the "base of operations" of the vessel and vessel owner, and established that other factual considerations might prove relevant in the choice of law context.

■ 5. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), makes it clear that the choice of law factors for jurisdiction under the General Maritime Laws of the United States are the same as for the Jones Act.

■ 6. An examination and evaluation of these choice of law factors under the circumstances of this case leads the Court to conclude that substantial and significant contacts exist between the accident in question and this American forum.

■ 7. Since the Court has determined that substantial and significant United States contacts exist, the application of American law to this case is mandated. This Court is without discretion to dismiss once American law has been found applicable. *Fisher v. Agios Nicolaos V*, 628 F.2d 308 (5th Cir. 1980), *reh. and reh. en banc denied*, 636 F.2d 1107 (5th Cir. 1980).

8. Jurisdiction of this case is properly in this Court under the test set forth in *Lauritzen, Rhoditis* and *Romero, supra*.

9. The Court is of the opinion that the denial of Defendant Delta's motion to dismiss involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal as authorized by 28 U.S.C. § 1292(b) may materially advance the ultimate termination of this litigation. The Court also believes that proceedings in this action should be stayed pending the outcome of the interlocutory appeal herein authorized.

10. Any conclusion of law deemed to be a finding of fact is hereby adopted as such.

Accordingly, it is hereby ORDERED that:

1. Defendant Delta's Motion to Dismiss is DENIED.

2. Defendant Delta may apply to the Fifth Circuit Court of Appeals for an appeal of this interlocutory order, pursuant to 28 U.S.C. § 1292(b) within ten (10) days from the date of this Order. If such application is timely made, these proceedings are STAYED until such time as the appeal is taken and a final disposition of the appeal is made. If such application is not made, this case will proceed to trial on the merits.