**Aristeu Fontes DE OLIVEIRA, Appellee,**

v.

**DELTA MARINE DRILLING COMPANY, Appellant.**

**No. 82–2024**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1982.

---

Dixie Smith, Houston, Tex., for appellant.

Robert A. Chaffin, Houston, Tex., for appellee.

Before BROWN, GEE and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Delta Marine Drilling Co. (Delta) brings an interlocutory appeal from the District Court's denial of its motion to dismiss on grounds of *forum non conveniens.* While the choice of law decision is a close call, we believe Delta's point is well taken and reverse and remand.

## I.

This case involves counting, specifically, counting contacts with different countries. Aristeu Fontes de Oliveira, a Brazilian national, brought suit against Delta, a Tyler, Texas corporation and owner of a drilling vessel, for personal injuries. Adding contacts, he asserts that the substantial links between the accident and the United States give the court jurisdiction to apply American statutory and General Maritime law to this cause of action. Delta, also doing its sums, argues that the number of contacts with the United States falls short of the necessary minimum. The District Court found de Oliveira's addition more nearly correct but allowed Delta an interlocutory appeal from its order, pursuant to 28 U.S.C. § 1292(b). We then granted leave to appeal to answer the question whether there exist sufficient contacts between the accident and the United States to justify applying American law.

The cause of action arises out of a personal injury that de Oliveira, a Brazilian citizen who has lived in Brazil all his life, sustained when the gangway connecting a vessel to a fixed platform collapsed. Schlumberger, Ltda., a Brazilian corporation, hired De Oliveira in Brazil as a geophysical assistant and car painter. Schlumberger, Ltda., which operates only in Brazil, had a contract for wire line well logging with Petrobras, the Brazilian national oil monopoly, which owned the platform in question.

On May 26, 1976, De Oliveira departed from Aracaju, Brazil, on a crew boat that took him to Delta's drilling tender vessel DELTA NINE, a converted cargo ship of Panamanian registry. DELTA NINE, after its conversion at the Avondale Shipyard in New Orleans, Louisiana, had sailed to Brazil in December 1974, where Delta and its Brazilian subsidiary, Perbras, also had a contract with Petrobras. De Oliveira had never previously worked on DELTA NINE or on Petrobras' platform.

Once on board, De Oliveira and his co-workers proceeded to the Petrobras platform via a catwalk gruesomely but accurately known in the trade as a widowmaker, *see Law v. Sea Drilling,* 510 F.2d 242 (5th Cir. 1975), which linked it to DELTA NINE. Many of the tools and the equipment which De Oliveira used were placed on the widowmaker. A Schlumberger, Ltda. engineer was in charge of the well logging crew. Perbras, however, ordered supplies for and employed the supervisory personnel of DELTA NINE. Dale Clements, a Delta/Perbras employee in command of DELTA NINE, gave no orders to de Oliveira or his colleagues. The line of authority, then, ran as follows: Petrobras governed all; Delta and Perbras carried out its work on the tender vessel, and Schlumberger, Ltda. supervised the platform operations.

While de Oliveira gathered tools on the widowmaker early in the pre-dawn morning of May 27, 1976, a submerged portion of the port anchor chain holding the tender vessel parted. The bow of DELTA NINE drifted downwind from the platform, the widowmaker came unhooked, and De Oliveira tumbled into the sea. As he fell, the widowmaker and his tool box struck him. Although, fortunately, no widow was made, de Oliveira sustained severe injuries, aggravated by his remaining in the water for over half an hour before being brought up to the deck.[1]

## II.

The District Court, 527 F.Supp. 332, citing the seven choice of law factors of *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), as well as *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) (eighth factor—"base of operations"), held that "substantial and significant contacts exist" between the accident and the forum. Once it finds that American law applies, the District Court lacks discretion to dismiss. *Fisher v. The Agios Nicolaos V,* 628 F.2d 308, 314 (5th Cir.

1980), *cert. denied sub nom., Valmas Bros. Shipping, S. A. v. Fisher,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981); *Volyrakis v. M/V ISABELLE,* 668 F.2d 863 (5th Cir. 1982). *See generally Piper Aircraft v. Reyno,* —— U.S. ——, ——, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 437 (1981).

In an intervening decision, published after the District Court entered its findings, we reconsidered the *Lauritzen* factors and the choice of law problem in the context of a foreign accident. In *Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982), we confronted a similar situation and held that American law did not apply. The estate of Chiazor, a Nigerian citizen employed by a Nigerian corporation who suffered fatal injuries on a platform off the coast of Nigeria, brought suit, after unraveling the chain of parenthood, against the American parent corporation. The District Court dismissed on the basis of *forum non conveniens,* finding too tenuous a connection with the United States. We affirmed. As Judge Tate explained,

> The substantiality of the contacts herein with Nigeria warrants the non-application of American law. We are unable to state, and *Rhoditis* in fact does not command us to hold, that the shipowner's base of operations is the sole controlling factor in a choice-of-law situation.

648 F.2d at 1018 (citations omitted). Acknowledging that no one factor controlled, and that the importance of certain contacts would vary with the type of maritime activity involved, he concluded,

> As in *Lauritzen, supra,* the overwhelming preponderance of the factors favors the application of Nigerian rather than American law as governing the employment and accident in question.

The American-owned Nigerian subsidiary conducting the enterprise might possibly be said to have a base of operations in America, it is true, but, unlike in *Rho-*

---

1. De Oliveira receives compensation for his injuries under the Brazilian worker's compensa-   tion plan.

**340**

*ditis, supra,* the totality of the circumstances of the case indicate this to be a minor weight in the scales. Here, the work performed by the Nigerian employer corporation in the operation and servicing of its drilling rig off Nigerian waters—albeit it was an American-owned subsidiary of American interests, with primary decisions made by American corporate offices in America—had insignificant operational contacts with the United States; and all day-to-day operating activities were in fact conducted in Nigeria. 648 F.2d at 1019. *See also Phillips v. Amoco Trinidad Oil Co.,* 632 F.2d 82, 84–85 (9th Cir. 1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *Chirinos de Alvarez v. Creole Petroleum Corp.,* 613 F.2d 1240, 1246–47 (3rd Cir. 1980).

That description fits the facts before us equally well. Although profits wend their way back to the United States, all the significant contacts center on Brazil. De Oliveira seeks to distinguish *Chiazor* on the grounds that it involved a submersible drilling rig rather than a blue water vessel such as DELTA NINE. This distinction might be a valid one, of course. The transient nature of a vessel's operations makes the place of injury a less significant factor among the *Lauritzen* choices. DELTA NINE was, however, a tender servicing the adjacent fixed platform.

De Oliveira had little or no contact with DELTA NINE. When he first set foot on that vessel, it was already anchored next to the platform. While an anchored vessel might still be more mobile than a submerged drilling rig, we believe that such hair-splitting analysis will serve no purpose. We find no principled basis on which to distinguish *Chiazor* from the present case.

Since the contacts with Brazil preponderate, we reverse and remand to the District Court for further proceedings.

REVERSED AND REMANDED.