Aristeu Fontes DE OLIVEIRA,
Plaintiff-Appellee,

v.

**DELTA MARINE DRILLING COMPA-
NY, Defendant-Appellant.**

No. 82–2024.

United States Court of Appeals,
Fifth Circuit.

June 20, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 26, 1983.

Dixie Smith and Scott R. Brann, Houston, Tex., for defendant-appellant.

Robert Chaffin, Houston, Tex., for plaintiff-appellee.

ON PETITION FOR REHEARING

Before BROWN, GEE and RUBIN, Circuit Judges.

PER CURIAM:

Acting in response to the application for rehearing, we withdraw the prior opinion in this case, 684 F.2d 337 (5th Cir.1982) and substitute the following:

Delta Marine Drilling Co. (Delta) brings an interlocutory appeal from the District Court's denial of its motion to dismiss 527 F.Supp. 332 on grounds of *forum non conveniens.* Finding that the district court erroneously based its ruling on the single ground that the vessel aboard which the plaintiff was injured had substantial contacts with the United States, we reverse and remand for entry of an order of dismissal conditioned, however, on Delta's consent to appear in the forum it contends to be convenient.

I.

Aristeu Fontes de Oliveira, a Brazilian national and a lifetime resident of Brazil, was employed by Schlumberger, Ltda., a Brazilian corporation operating only in Brazil. Schlumberger contracted with Petrobas, the Brazilian national oil company, to provide well logging services for a well that was being drilled under a separate contract by Delta's Brazilian subsidiary, Perbas, from a drilling platform. De Oliveira and the members of the well-logging crew were transported by crew boat from Aracaju, Brazil, on May 26, 1976, to the vessel, DELTA NINE.

All of the drilling equipment utilized in the operation was provided by Delta and transported on the DELTA NINE. The DELTA NINE is an oceangoing vessel and was on its maiden assignment as a tender vessel. It had been moved adjacent to the platform. When the logging crew arrived, its members were transferred from the crew boat to the vessel by a personnel basket lifted by a crane.

De Oliveira and his coworkers then proceeded to the Petrobas platform via a catwalk gruesomely but accurately known in the trade as a widowmaker. *See Law v. Sea Drilling,* 510 F.2d 242 (5th Cir.1975). This linked the platform to the DELTA NINE. Many of the tools and the equipment which de Oliveira used were placed on the widowmaker. A Schlumberger engineer was in charge of the well logging crew. The drilling operations were supervised by an American, Dale Clements, who was employed by Delta. Clements was in charge of safety on both the platform and the DELTA NINE.

While de Oliveira was gathering tools on the widowmaker early in the pre-dawn morning of May 27, 1976, a submerged portion of the port anchor chain holding the tender vessel parted. The bow of DELTA NINE drifted downwind from the platform, the widowmaker came unhooked, and de Oliveira tumbled into the sea. As he fell, the widowmaker and his tool box struck him. Although, fortunately, no widow was made, de Oliveira sustained severe injuries, aggravated by his remaining in the water for over half an hour before being brought up to the deck.[1]

---

1. De Oliveira receives compensation for his injuries under the Brazilian worker's compensa-  tion plan.

In a suit brought in the U.S. District Court for the Southern District of Texas, de Oliveira contended that he was injured by its negligence, the unseaworthiness of the DELTA NINE and the concurrent negligence of his employer, Schlumberger. He joined as codefendants Schlumberger and two Texas corporations, Schlumberger Limited and Schlumberger Well Services, contending that Schlumberger (Brazil) is their alter ego. These claims have now been dismissed, so the only remaining claim is against Delta. Contending that this claim is governed by Brazilian law, Delta moved to dismiss the suit on the basis of *forum non conveniens.*

In such cases we must decide what body of law applies, United States or foreign. We have held that, if United States law applies, a federal court should entertain the suit. *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 315 (5th Cir.1980), *cert. denied sub nom., Valmas Bros. Shipping, S.A. v. Fisher,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981); *Volyrakis v. M/V ISABELLE,* 668 F.2d 863 (5th Cir.1982). *But see Piper Aircraft v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 437 (1981). If, however, foreign law applies, the court may dismiss the suit if there is another more convenient forum. *Fisher v. Agios Nicolaos V, supra,* 628 F.2d at 314. If the district court decides that foreign law applies, "its discretion in granting a *forum non conveniens* dismissal will not ordinarily be disturbed." *Id.,* 628 F.2d at 318. But whether American or foreign law applies, the choice of the applicable law is itself a question of law, and we fully review the district court's choice of law as we would any other legal decision. *Bailey v. Dolphin International, Inc.,* 697 F.2d 1268, 1274 (5th Cir.1983).

## II.

To determine what set of legal precepts controls, the district court properly referred to the seven choice of law factors of *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), as well as the eighth factor added by *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) ("the shipowner's base of operations"), and held that "substantial and significant contacts exist" between the accident and the forum. 527 F.Supp. 332 (S.D.Tex.1981). It reached this conclusion because the complete operation and ultimate control of the work was in the hands of Americans employed by Delta; the vessel could not operate without receiving replacement parts from the United States and without American personnel; the vessel's base of operations was in the United States; de Oliveira's work supported the vessel's mission; and substantial and daily operational control of the DELTA NINE was exercised by Delta from its headquarters in Tyler, Texas. The district court also relied on Delta's failure to show that any remedy available to de Oliveira in Brazil is adequate and certain. We note, however, that no act of negligence at Delta's headquarters is alleged but only the negligence of Clements on the Brazilian job site.

*Lauritzen-Rhoditis* tell us that we must decide what body of law is applicable by looking at eight factors. We do not merely add up the scores for and against, for the test is neither arithmetic nor mechanistic. *Hellenic Lines Ltd. v. Rhoditis,* 412 F.2d 919 (5th Cir.1969), *aff'd,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), *reh. den.* 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970). The Supreme Court said, in *Rhoditis,* "If, as stated in *Bartholomew v. Universe Tankships Inc.,* 263 F.2d 437, the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts which this ship and this owner have with the United States." In *Rhoditis,* a Greek citizen was injured in the Port of New Orleans. The Court refused to permit the vessel's "alien owner, engaged in an extensive business operation in this country, ... an advantage over citizens engaged in the same business...." 358 U.S. at 310, 90 S.Ct. at 1734, 26 L.Ed.2d at 256. The "base of operations" test was, under *Rhoditis'* circumstances, another, albeit an important, factor to add to place of injury and residence of

the seaman. It is not a paramount criterion, overriding the seven *Lauritzen* factors. Thus, in *Fisher,* we found that United States law "may" apply when the injury occurred in a United States port, the vessel had a substantial base of operations in the United States and its owners derived substantial revenues from United States trade. 628 F.2d at 317.

In *Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015 (5th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982), published after the district court entered its findings, we considered the choice of law problem in the context of a foreign accident. The estate of Chiazor, a Nigerian citizen employed by a Nigerian corporation who suffered fatal injuries on a platform off the coast of Nigeria, brought suit, after unraveling the chain of relationship, against the American parent corporation. The district court dismissed on the basis of *forum non conveniens,* finding too tenuous a connection with the United States. Stating that he should first have determined which nation's law is applicable, we held that Nigerian law was because of "the substantiality of the contacts herein with Nigeria warrants the non-application of American law. We are unable to state, and *Rhoditis* in fact does not command us to hold, that the shipowner's base of operations is the sole controlling factor in a choice-of-law situation." *Id.* 648 F.2d at 1018.

■ There are, of course, factual distinctions that push the present case closer to United States jurisdiction. *Chiazor* involved a vessel (a submersible drilling rig) that had been anchored off the Nigerian coast for a number of years. Day-to-day operational activities aboard the vessel were in fact conducted in Nigeria. Whether there were American supervisors aboard the vessel does not appear, but we noted that "most witnesses would be located in Nigeria." 648 F.2d at 1019, n. 6. Here the vessel had only recently come to Brazil. But Brazil was the place of the alleged wrongful act, the place of allegiance of de Oliveira, and the place of his employment contract with his direct employer, Schlumberger, itself a Brazilian corporation. The negligent acts and most of the events causing the vessel to be allegedly unseaworthy occurred in Brazil. While de Oliveira alleges he was a Jones Act seaman, he was not directly employed as a crew member, and would acquire that status only if he were a borrowed servant by virtue of the relationship of the duties performed for his direct employer to the vessel and its mission.

For these reasons we hold that Brazilian law is applicable.

### III.

■ This alone does not resolve the matter. The convenience or inconvenience of a United States forum for resolution of a dispute involving Brazilian law is a separate question. *Chiazor, supra,* 648 F.2d at 1018. In deciding whether a case should be dismissed because filed in a *forum non conveniens,* we consider such factors as the (1) private interests of the litigants, (2) relative ease of access to sources of proof, (3) availability of compulsory process, (4) cost of obtaining attendance of willing witnesses, and (5) the possibility of view of the premises. *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Chiazor, supra,* 648 F.2d at 1019. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of a forum should rarely be disturbed." *Gulf Oil Corporation v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062. We consider these factors:

1. Private interests of the litigants: de Oliveira is a Brazilian national and is a permanent resident of Brazil. He obtained employment with a Brazilian corporation. His duties to that corporation brought him aboard the vessel.

2. Relative ease of service of process: The other members of the Schlumberger crew were apparently Brazilians. De Oliveira was treated in Brazil. Thus the attending medical personnel are located in Brazil.

3. Compulsory process: The vessel itself is apparently still in Brazilian waters and, by our order, we will insure the availability of compulsory process against the defendant.

4. Cost of obtaining attendance of willing witnesses. These all apparently reside in Brazil, save Clements who is apparently still assigned there.

5. The possibility of a view of the vessel. This can be obtained only in Brazil.

We find the balance strongly in favor of the defendant. Retention of jurisdiction by the United States court would work an injustice particularly since Brazilian law would apply.

If, on the motion of Delta, this suit is dismissed de Oliveira should not be required to face another forum challenge. Therefore, in accordance with our action in a number of recent cases, the district court shall condition its order of dismissal substantially as follows: that, if the plaintiff should file suit in an appropriate Brazilian court within ninety days of the dismissal order, Delta shall submit to service of process and to the jurisdiction of the court; Delta will there formally waive any statute of limitations that has matured since the commencement of this action in the Southern District of Texas; Delta will formally agree in the Brazilian court to make available in Brazil all relevant witnesses and documents within its control; depositions, answers to interrogatories and the like filed herein may be used in the Brazilian proceeding to the same extent as if they had originated therein; as to witnesses not in its control, Delta will use its best efforts to locate those witnesses and make them available for depositions; Delta will formally agree in the Brazilian proceeding to satisfy any final judgment rendered by that court; and, should Delta fail to promptly meet any of these conditions, the district court will resume jurisdiction over the case. The conditional order may also provide that it can be made final by Delta (1) if de Oliveira does not file suit in the appropriate Brazilian court within 90 days after the order becomes effective or, (2) if the case is time-

ly filed, Delta has complied with all of the conditions of the order, and the appropriate Brazilian court has not finally declined jurisdiction. However, should the appropriate Brazilian court subsequently finally decline jurisdiction over the case, it may be reopened by de Oliveira in the district court if it was timely filed in Brazil in accordance with this order and limitations will not run during the period from the initial filing herein until 90 days after the Brazilian court's declining of jurisdiction. Notice of a motion to make the conditional order final, of course, must be given to de Oliveira and de Oliveira must be given the opportunity to resist the motion on grounds of noncompliance only. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379 (5th Cir.1983).

REVERSED AND REMANDED.