**Tomaslav ZEKIC, Plaintiff,**

v.

**READING & BATES DRILLING CO. and M/V Mr. Jack, Defendants.**

**Civ. A. No. 80–2956.**

United States District Court, E. D. Louisiana.

Aug. 11, 1981.

David A. Hilleren, New Orleans, La., for plaintiff.

Joel L. Borrello, Alan A. Zaunbrecher, New Orleans, La., for ·defendants.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

CASSIBRY, District Judge:

Plaintiff filed this action under the Jones Act and under general maritime law for damages due to negligence and unseaworthiness, and for maintenance and cure. Plaintiff seeks damages for injuries allegedly sustained in an accident on board the Mr. Jack, a jack-up drilling rig owned by Reading and Bates Exploration Company, and located off the coast of Italy in Italian territorial waters. Plaintiff was employed by an affiliate of Reading and Bates Exploration Co., Reading & Bates Drilling Co. Both entities are American corporations. Defendant has filed this motion to dismiss and/or for summary judgment on the grounds that Italian law should apply to this case and therefore plaintiff's complaint under the Jones Act and general maritime law fails to state a cause of action.[1]

In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court set out seven factors in determining the applicable law in an admiralty context: (1) Place of wrongful act; (2) Law of the flag; (3) Allegiance or domicile of the injured party; (4) Allegiance of the

---

1. *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015, 1020 n.7 (5th Cir. 1981), indicated that if plaintiff brings an action under the Jones Act and general maritime law and that court concludes that American law is not applicable, then the court should dismiss the action for failure to state a claim or, if affidavits and depositions are considered, on motion for summary judgment. If the plaintiff includes a claim for relief under the applicable foreign law, then the court must decide the *forum non conveniens* issue.

defendant shipowner; (5) Place of the contract; (6) Inaccessibility of the foreign forum; (7) Law of the forum. In *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Court indicated that the shipowner's base of operation is also relevant in determining choice of law questions. In general the Fifth Circuit has approved a very liberal application of American law to foreign seamen. *See Fisher v. Agios Nicolaos V*, 628 F.2d 308 (5th Cir. 1980). Recently, however, in *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir. 1981), the Fifth Circuit applied the *Lauritzen-Rhoditis* factors in a very different manner in the context of an admiralty action arising out of an injury aboard a drilling rig permanently stationed off a foreign coast.

In *Chiazor*, the decedent was a Nigerian citizen employed on board a submersible drilling rig indirectly owned and operated by an American corporation, Kerr-McGee, through certain foreign subsidiary corporations. The rig had been located off the coast of Nigeria since 1964. His representatives brought suit under the Jones Act, the Death on the High Seas Act, and the general maritime law of the United States. The district court dismissed on *forum non conveniens* grounds after indicating that Nigerian law would apply under the *Lauritzen-Rhoditis* factors.

On appeal the plaintiff argued that the court should look through the Nigerian corporation operating the rig and find that the vessel's true base of operations was in Oklahoma, the principal place of business of the parent corporation, Kerr-McGee. The court of appeals *accepted* plaintiff's position for purposes of the decision, but nevertheless, concluded that the United States base of operations was insufficient to bring the case under American law. In doing so the court distinguished the case from a traditional maritime case involving an ocean-going vessel:

> [In] *Rhoditis*, in which the court was concerned with a true maritime vessel, one plying the seas as an integral part of the shipping industry, the shipowner's base of

operations was considered one substantial contact, inter alia.

> However, here we are faced with a "vessel" (a submersible drilling rig) that has been permanently stationed off the coast of Nigeria since 1964. Hence, such factors as place of wrongful act, allegiance or domicile of the injured, and place of contract, which may be less substantial in the shipping context, tend to take on added significance under the present circumstances.

> ... The decedent was a Nigerian citizen, he was employed by Nigerian corporations, the incident occurred off the coast of Nigeria, the "vessel" had been stationed off Nigeria since 1964, and the plaintiffs are all Nigerian citizens. As in *Lauritzen, supra*, the overwhelming preponderance of factors favor the application of Nigerian rather than American law as governing the employment and accident in question. 648 F.2d at 1018–19.

Finally, the court noted that even though primary decisions were made by corporate officers in the United States, the day-to-day operation of the rig was conducted in Nigeria.

Viewed in light of *Chiazor*, the result in the present case is largely foreordained. The previously dormant factors of place of injury, place of domicile and place of contract all given new life in *Chiazor* indicate that Italian law should apply in this case. The accident occurred off the coast of Italy. The Reading and Bates rig had been located in Italian territorial waters since 1975. Plaintiff is a citizen of Yugoslavia. However, plaintiff's employment contract was signed in Trieste, Italy and it states that for all purposes of his employment plaintiff was to be considered a permanent resident of Trieste, Italy.

Moreover, Italy has a substantial interest in regulating drilling off its coast. The Italian state owned oil company, A.G.I.P., S.p.A., imposed numerous regulations on off-shore drilling activities, including well control and other procedures. Italian labor legislation prohibited employment contracts

like that plaintiff signed from lasting longer than six months. Plaintiff received workmen's compensation under Italian law. Finally, as in *Chiazor*, the majority of day-to-day decisions concerning the operation of the rig were made in the Reading & Bates office in Ravenna, Italy.

This case differs from *Chiazor* chiefly in the sense that the plaintiff's employer and the operator of the rig were both American corporations—not foreign subsidiaries of American corporations. However, I do not believe that this factor should make a material difference in this case. *Chiazor* does not appear to rely heavily on the existence of intervening foreign subsidiaries in determining that American law does not apply. Instead, the court assumes the defendant's contacts with the United States and then finds that those contacts are outweighed by those of the foreign jurisdiction. Moreover, the liberal interpretation of the applicability of American law found in *Fisher v. Agios Nicolaos V, supra*, suggests that if this had been a traditional seaman's case involving an ocean-going vessel the court would have found the beneficial ownership of the foreign corporations sufficient to invoke American law.[2] Therefore, it is unlikely that the existence of intervening foreign subsidiaries accounted for the result in *Chiazor*.[3]

Instead, as suggested above, the Fifth Circuit has apparently concluded that maritime suits arising out of injuries on relatively stationary drilling rigs should be treated differently than suits involving traditional ocean-going vessels. Applying the factors highlighted in *Chiazor*, I have concluded that Italian law should apply in this case and that the suit should be dismissed.

2. In this respect the Fifth Circuit's view in *Fisher* appears consistent with the Second Circuit's view that beneficial ownership of a vessel by an American corporation is sufficient to invoke American law. *See, e.g., Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470 (2d Cir. 1974); *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437 (2d Cir. 1959).

3. This view is also reinforced by the *Chiazor* court's favorable reference to the Ninth Circuit opinion in *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir. 1980), *cert. denied*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). In *Phillips*, the court reached a conclusion identical to that found in *Chiazor* even though, as in this case, the rig flew an American flag and was directly owned by an American corporation.