**Manuel Triananes FAJARDO, Plaintiff-Appellant,**

v.

**TIDEWATER, INC., Tidewater Marine Service, Inc. and Tidewater Nautico, Inc., Defendants-Appellees.**

No. 82–3299.

United States Court of Appeals, Fifth Circuit.

June 23, 1983.

Silvestri & Massicot, Anthony L. Marinaro, New Orleans, La., Sullivan, Graham & Camp, Eugene V. Flynn, Garrett P. Graham, San Francisco, Cal., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, George J. Fowler, III, New Orleans, La., for defendants-appellees.

Before CHARLES CLARK, Chief Judge, and GOLDBERG and REAVLEY, Circuit Judges.

PER CURIAM:

This case is affirmed on the basis of the district court's opinion, which is attached hereto as an Appendix. *See also Bailey v. Dolphin International, Inc.,* 697 F.2d 1268 (5th Cir.1983); *Vaz Borralho v. Keydril Co.,* 696 F.2d 379 (5th Cir.1983).

AFFIRMED.

## APPENDIX

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MANUEL TRIANANES FAJARDO | CIVIL ACTION |
| VS. | No. 80–5094 |
| TIDEWATER, INC., ET AL. | SECTION "A" |

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the motion of defendants for summary judgment. After careful consideration of the record, the memoranda and stipulations of counsel, the facts and the law, it is the opinion of the Court that the motion should be GRANTED if the defendants comply with the conditions hereinafter set out, on the grounds of *forum non conveniens,* or DENIED should defendants fail to comply with such.

Plaintiff Manuel Fajardo is a Spanish citizen domiciled in Boiro La Coruna, Spain. On June 6, 1977, he sustained personal injuries while working aboard the M/V GOLIATH TIDE which was operating in the navigable waters of the Norwegian sector of the North Sea. Pursuant to a Spanish employment contract, executed in Spain between plaintiff and a Spanish shipping employment agency, Mr. Fajardo was an employee of Tidex International, Inc., a Panamanian corporation, at the time of his accident.

Defendants as a matter of defense contend that the matter was settled by plaintiff. It appears undisputed that on March 27, 1979, plaintiff met with counsel for defendants (and counsel for Lineas Atlanticas, S.L. and its insurer) in the presence of a Certified Spanish Notary Public in Coruna, Spain and confected a settlement agreement for the sum of $100,000.00 in which he agreed to fully discharge defendants and the Spanish employment agency which had hired him of all liability arising out of plaintiff's June 6, 1977 accident. Plaintiff was not represented by counsel, and the release was written in English. Plaintiff now contests the validity of the release on numerous grounds (see plaintiff's Motion to Strike filed November 10, 1981) and claims that such is not a valid defense to plaintiff's claim.

The M/V GOLIATH TIDE is a 218 foot towing-supply vessel owned by Tidewater Nautico, a Panamanian corporation. Built in Norway in 1974, she has plied the North Sea, the coastal waters of Brazil and Canada. The vessel has never visited a United States port.

Neither Tidex International nor Tidewater Nautico perform any work or do any business in the Continental United States or its territorial waters. Both Tidex International and Tidewater Nautico are wholly owned subsidiaries of Tidewater, Inc., a Delaware corporation. Tidewater, Inc. is a diversified holding company headquartered in New Orleans. Through its various domestic and foreign subsidiaries (including those involved in this litigation), Tidewater, Inc. owns and operates a fleet of almost four hundred vessels which are chartered for use by the offshore oil and gas industry. Almost ninety-five percent of its stock is owned by United States citizens.

Viewing the record in the light most favorable to the non-moving party, *Chirinos de Alvarez v. Creole Petroleum Corp.,* 613 F.2d 1240 (3d Cir.1980), it would appear that ultimate responsibility, management, and control of Tidewater's overseas operations are vested in the directors, officers, and personnel of the parent corporation's Louisiana offices.[1]

Neither Tidex International, Tidewater Nautico, Tidewater, Inc., or any of its other subsidiaries maintain offices in Spain, Panama, or Norway.

Defendants argue that neither the Jones Act nor the general maritime law of the United States apply to plaintiff's claim, and that his suit should be dismissed on the grounds of *forum non conveniens.* They contend that the accident itself lacks sufficient contacts with the United States to warrant application of the Jones Act, and argue that a Spanish forum would be more appropriate for the adjudication of claims arising out of Mr. Fajardo's alleged accident and its purported settlement. Counsel for defendants has represented that his clients would agree to submit to the jurisdiction of the courts of Spain.

The plaintiff contends that although four nations could claim an interest in the resolution of this matter, the claim of the United States is by far the strongest. Relying on *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731 [26 L.Ed.2d 252] (1970), and its progeny, plaintiff invites us to hold that defendants' "base of operations" and beneficial United States ownership, standing alone, are a sufficiently substantial United States "contact" to subject Tidewater, Inc. and its foreign subsidiaries to the jurisdiction of the Jones Act. We disagree, and therefore decline the plaintiff's invitation.

In determining whether Jones Act jurisdiction is present, eight factors are significant for consideration. *Lauritzen v. Larson,* 345 U.S. 571, 73 S.Ct. 921 [97 L.Ed. 1254] (1953); *Rhoditis, supra.* They are: (1) Place of the wrongful act; (2) Law of the flag; (3) Allegiance or domicile of the injured party; (4) Allegiance of the defendant shipowner; (5) Place of the contract; (6) Inaccessibility of a foreign forum; (7) Law of the forum; (8) The shipowner's base of operations. These factors are also applicable in determining jurisdiction of claims

1. Primarily those located in New Orleans and Morgan City.

asserted under the General Maritime Law. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468 [3 L.Ed.2d 769] (1959).

The present action arises out of a Norwegian accident, on board a vessel owned by a Panamanian corporation flying the flag of Panama, in which injuries were sustained by a Spanish citizen hired in Spain by a Panamanian corporation. There is no evidence to suggest the inaccessibility of foreign fora.

While the Court is mindful of the admonition that "*Lauritzen* did not create a contact counting test," *Hellenic Lines Limited v. Rhoditis,* 412 F.2d 919 (5th Cir.1969), and further, that parties may not "avoid their statutory duties by adopting certain labels which make them appear foreign," *Pavlou v. Ocean Trading Marine Corporation,* 211 F.Supp. 320, 324 (S.D.N.Y.1962),[2] it is nonetheless true that in this case, all contacts except the base of operations are with nations other than the United States.

The Court notes that it has given less weight to the base of operations factor than it may have done if there had been any evidence to suggest that the defendants were using foreign incorporation to evade lawsuits or judgment for personal injuries sustained by their employees in the course of their employment. The willingness of the defendants to submit to the jurisdiction of the Spanish courts and to satisy any judgment which may be rendered against them has been a significant factor in the Court's analysis and one which satisfies the Court that there is an accessible (and meaningful) foreign forum to do justice to plaintiff's claim.

While it is well established that the eight *Lauritzen-Rhoditis* criteria are not to be regarded as equally significant, and that the base of operations criterion is especially significant, the Court is of the opinion that beneficial ownership and a base of operations in the United States, in the factual context of the present case, cannot establish Jones Act jurisdiction, especially where, as here, the vessel involved has never even visited United States waters.

The Court has found only two cases (now almost twenty-five years old and both from the Southern District of New York) which appear arguably to regard the history of the vessel itself as irrelevant to a "base of operations" analysis (especially where the plaintiff is neither a United States citizen or domicile).[3]

Although courts have frequently used strong language to assert the importance of the base of operations factor, and/or of beneficial ownership, almost all have done so within a factual framework involving other substantial factors favoring the application of United States law and the exercise of jurisdiction. In the vast majority of cases, the vessel itself has had a significant commercial nexus with shipping to or from the ports of the United States.[4]

---

**2.** *See also* the discussion in *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437 (2d Cir. 1959) at 442; cert. denied 359 U.S. 1000, 79 S.Ct. 1138 [3 L.Ed.2d 1030]; *DeMateos v. Texaco, Inc.,* 562 F.2d 895 (3d Cir.1977), cert. denied 453 [435] U.S. 904, 98 S.Ct. 1449 [55 L.Ed.2d 494].

**3.** *Bobolakis v. Compania Panamena Maritima San Gerassimo,* 168 F.Supp. 236 (S.D.N.Y. 1958); *Rodriguez v. Solar Shipping, Ltd.,* 169 F.Supp. 79 (S.D.N.Y.1958).

**4.** For example: the entire income of the vessel involved in *Rhoditis* was derived from cargo going to or from the United States; most of the voyages of the vessel involved in *Antypas v. Cia Maritima San Basilio, S.A.,* 541 F.2d 307 (2d Cir.1976), cert. denied 427 [429] U.S. 1098 [97 S.Ct. 1116, 51 L.Ed.2d 545], were either to

or from ports of the United States; as were forty percent of the voyages of the vessel involved in *Moncada v. Lemuria Shipping Corp.,* 491 F.2d 470 [41 L.Ed.2d 667] (2d Cir.1974), cert. denied, 417 U.S. 947, 94 S.Ct. 3072 [41 L.Ed.2d 667] (1974); most of the voyages of the vessel in *Mattes v. National Hellenic American Line, S.A.,* 427 F.Supp. 619 (S.D.N.Y.1977) were either to or from United States ports; *Fisher v. Agios Nicolao V,* 628 F.2d 308 (5th Cir.1980) involved a vessel whose entire service under a new owner consisted of a voyage to a United States port at the time of plaintiff's injury; *Amato v. Texaco, Inc.,* C.A. 77–3221, Section "G" (E.D.La.1978), which has been cited to the Court by plaintiff, involved a vessel which called "regularly" on United States ports; even *Bartholomew, supra,* and *Carroll v. United States,* 133 F.2d 690 (2d Cir.1943) in-

This is precisely what the M/V GOLIATH TIDE lacks. Built in Norway in 1974, she has yet to operate in the United States waters, and has derived all her income from overseas employment. While there may be seemingly sound prudential arguments for extending jurisdiction to a case such as the one before us, we have been unable to discover any case which has clearly gone quite so far. The "cold objective look" at the "actual operational contacts" which is demanded of us by *Rhoditis* must be directed at *both* the shipowner *and* at the ship. Plaintiff would have us scrutinize the former but ignore the latter. *Rhoditis* requires us to examine *both*.[5] Since the M/V GOLIATH TIDE itself lacks any operational contacts with the United States, we conclude that the contacts here presented are insufficient to confer Jones Act jurisdiction over plaintiff's claim.

In view of the purported Spanish settlement, it cannot be contested that, as this controversy *now* stands, and as it must *now* be adjudicated, there are numerous issues of Spanish law which must be resolved (regardless of what the original law applicable to the case may have been at the time of the accident). From the record, it is clear that most of those involved in the settlement, including plaintiff, are located in Spain. These witnesses, as well as others (such as doctors who may have examined plaintiff upon his repatriation), are likely to be crucial to defendants' efforts in a trial on the merits. It is also clear that few of the other parties except counsel, are likely to be *anywhere* within the United States (let alone the Eastern District of Louisiana).

Accordingly, the Court is of the opinion that dismissal on the grounds of *forum non conveniens* is appropriate,[6] provided that: the defendants (1) agree to submit to the jurisdiction of the Courts of Spain; (2) agree to waive all statute of limitations and laches defenses; and (3) post a surety bond in a form approved by the Court in the amount of $750,000.00 into the Registry of this Court to assure their appearance in Spanish proceedings, and to satisfy any award which may be rendered against defendant Tidewater, Inc. or any of its subsidiaries. *See Koupetoris v. Konkar Intrepid Corp.*, 402 F.Supp. 951 (S.D.N.Y.1975).

Defendants will have 30 days to comply with the conditions heretofore set out. If they fail to do so, the Court will retain jurisdiction, and the matter will be set for trial.

New Orleans, Louisiana, this 6th day of April, 1982.

---

volved vessels actually in or bound for the United States at the time of the plaintiff's injury.

In some cases the crucial added factor seems to have been the domicile and allegiance of the plaintiff. *See* e.g. *Rode v. Sedco, Inc.*, 394 F.Supp. 206 (E.D.Tex.1975) and cases cited therein, *Carroll, supra* and *Bartholomew, supra*.

5. "... the facade of the operations must be considered as minor, compared with the real

nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States. *Rhoditis*, 398 U.S. at 311, 90 S.Ct. at 1734–1735.

6. *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015 (5th Cir.1981); *Fisher v. Agios Nicholaos V*, 628 F.2d 308 (5th Cir.1980), *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 [91 L.Ed. 1055] (1947).