Colin KOKE, Plaintiff-Appellant,

v.

**PHILLIPS PETROLEUM COMPANY,**
Phillips Petroleum Company Norway,
A Wholly Owned Subsidiary of Phillips
Petroleum Co., Sedco, Inc., and Ocea-
neering International, Inc., Jointly and
Severally, Defendants-Appellees.

Dermot P. O'SULLIVAN,
Plaintiff-Appellant,

v.

**PHILLIPS PETROLEUM CO., et al.,**
Defendants-Appellees.

Nos. 82–2388, 82–2389.

United States Court of Appeals,
Fifth Circuit.

April 5, 1984.

The Jaques Admiralty Law Firm, Leonard C. Jaques, Detroit, Mich., for plaintiffs-appellants.

M. David Frock, Houston, Tex., for Phillips Petroleum Co. and Norway Div.

Vinson & Elkins, Eugene J. Silva, Frank Spagnoletti, Houston, Tex., for Sedco, Inc.

Royston, Rayzor, Vickery & William, James Patrick Cooney, Tobi A. Tabor, W. Robins Brice, Houston, Tex., for Oceaneering Intern.

Before GEE and GARWOOD, Circuit Judges, and EAST *, District Judge.

GARWOOD, Circuit Judge:

This is an appeal from orders of the district court conditionally dismissing two actions, each brought under the Jones Act, 46 U.S.C. § 688 (1976), and the general maritime law. Because of the similarity of the appellants' claims, they have been consolidated for this appeal. The primary questions for this Court's review are (1) whether the conditional orders are appealable, and (2) whether American law applies to the appellants' claims and, if not, whether the district court abused its discretion in dismissing the case for *forum non conveniens*. Because we find that the conditional orders in these cases effected in essence a dismissal of the appellants' claims without

* District Judge of the District of Oregon, sitting by designation.

prejudice, we hold that they are appealable as final orders under 28 U.S.C. § 1291. We further hold that the district court correctly determined that American law does not apply to the appellants' claims and that the court did not abuse its discretion in dismissing for *forum non conveniens.* Therefore, we affirm.

## I.

### FACTS

The appellants in these consolidated cases, Colin Koke and Dermot O'Sullivan, are British subjects who received injuries in October 1978 and October 1979, respectively, while working as divers aboard the Sedco/Phillips SS. At the time of their injuries, the vessel, which flies the American flag, was in the Norwegian sector of the North Sea.

The Sedco/Phillips SS is a large self-contained, semi-submersible vessel that services the Ekofisk oil field facilities in the North Sea. It was constructed in Japan under a contract between Sedco, Inc. (Sedco) and Phillips Petroleum Company Norway (Phillips of Norway), a wholly owned subsidiary of Phillips Petroleum Company. Although the Sedco/Phillips SS can move under its own power, it was towed from Japan to the North Sea in 1977 where it has remained since that date.[1] The vessel has never operated in nor traveled through the territorial waters of the United States.

According to the agreement between Sedco and Phillips of Norway, the Sedco/Phillips SS has two primary functions: (1) servicing and repair of offshore production facilities; and (2) support of offshore pipeline inspection and repair. Other functions are fire fighting, support of offshore construction, and pollution control. The vessel performs its work while anchored over a location. Although its usual area of operation is the Norwegian sector of the North Sea, it may also be required to travel into the English and German sectors to repair and service the pipelines that extend into these sectors.

Sedco, an American corporation with its principal place of business in Dallas, Texas, owns the vessel and is responsible for its operation, including the supervision of moving operations and positioning on location. Support services for the day-to-day activities of the vessel are provided by a subcontractor of Sedco, from an office in Stavenger, Norway.

The Sedco/Phillips SS is chartered by Phillips of Norway, a Delaware corporation that has its principal place of business in Norway and operates in the Ekofisk fields under production licenses granted by the Norwegian government. Under agreements related to these licenses, Phillips of Norway is required to have half of its directors residents of Norway, and to refrain from any activities other than in Norway. Phillips of Norway is a wholly owned subsidiary of defendant Phillips Petroleum Company (Phillips), also a Delaware corporation, with its principal place of business in Oklahoma.

Defendant Oceaneering International, Inc. (Oceaneering U.S.), a Delaware corporation with its principal place of business in Houston, Texas, is the parent company of Oceaneering International A.G. (OIAG), a Swiss corporation and the employer of plaintiff-appellant Colin Koke, and of Oceaneering International Services, Ltd. (OISL), a United Kingdom corporation with a base of operations in Aberdeen, Scotland and the employer of plaintiff-appellant Dermot O'Sullivan. OIAG and OISL provided diving services to the Sedco/Phillips SS under a contract between Phillips of Norway and

---

1. All parties, including both appellants, indicated in their briefs here and to the court below that the vessel was towed. While the appellants asserted during oral argument that the vessel instead traveled to the North Sea under its own power, they did not state any basis for this assertion. Their joint brief in this Court states, "... she was towed to the North Sea, rather than sailing under her own power."

Oceaneering Norway A/S, a Norwegian corporation which is another wholly (or majority) owned subsidiary of Oceaneering U.S.[2]

Appellants, Koke and O'Sullivan, brought suit under the Jones Act and the general maritime law of the United States against Phillips, Phillips of Norway, Sedco, and Oceaneering U.S. in the Eastern District of Texas. The defendants moved to dismiss on the basis of *forum non conveniens.* After a hearing, the district court first determined that American law was not applicable to the suit under the standards established by the Supreme Court in the *Lauritzen-Rhoditis-Romero* trilogy[3] as applied by this Court to cases involving "the context of 'fixed rig' operations" in *Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015 (5th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). The court next determined that a dismissal for *forum non conveniens* was appropriate based on the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). After indicating in each case that "it is hereby ... ordered that the plaintiff's complaint be dismissed," the court stated that the dismissal was conditioned on three requisites: (1) that all defendants consent to jurisdiction in a single appropriate foreign forum; (2) that all defendants waive any defense regarding the statute of limitations; and (3) that all defendants consent to satisfying any judgment rendered by such court. The court further indicated that it would "reassume jurisdiction and move the case towards its resolution" should any of the defendants fail to satisfy the conditions.

---

**2.** Koke joined the Sedco/Phillips SS by boat from Stavenger, Norway. O'Sullivan, however, apparently joined the vessel at Cape Town, Africa during its journey from Japan.

**3.** *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). *Romero* extended the princi-

## II.

### APPEALABILITY

■ Courts of appeal are courts of limited jurisdiction. Generally, they may hear appeals only from judgments that are final under 28 U.S.C. § 1291.[4] The threshold question for this Court, therefore, is whether the conditional orders in this case are appealable as final judgments. In addressing this issue, we note that none of the parties has raised a question regarding this Court's jurisdiction. This Court, however, has the duty to examine the basis of its jurisdiction, and by its own motion if necessary. *Save the Bay, Inc. v. United States Army,* 639 F.2d 1100, 1102 (5th Cir.1981). Further, it is irrelevant that the parties, who submitted briefs on this issue at the request of this Court, all assert that the orders are appealable. Jurisdiction cannot be conferred on this Court by agreement where it is otherwise lacking under section 1291. *Matter of Kutner,* 656 F.2d 1107, 1110 (5th Cir.1981), *cert. denied sub nom., Stewart v. Kutner,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

■ Dismissals for *forum non conveniens,* unlike transfers under 28 U.S.C. § 1404(a), have been considered final and appealable by right. *Menendez Rodriguez v. Pan American Life Insurance Co.,* 311 F.2d 429, 432 (5th Cir.1962). *See also* 15 Wright, Miller & Cooper, *Federal Practice & Procedure, Jurisdiction* § 3914 (1976). A question arises in this case, however, because of the protective conditions contained in the orders of dismissal. The orders indicate that "this dismissal is conditioned on three requisites" and that "should any of the above conditions not be met ... this court will reassume jurisdiction ...." The issue is whether these conditions destroy the finality of the *forum*

---

ples enunciated in *Lauritzen,* a Jones Act case, to cases involving the general maritime law.

**4.** This statute provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court." There are statutory exceptions to section 1291, but none apply in the present case.

*non conveniens* dismissal.[5] Based on our review of the applicable legal principles, we find that they do not.

This Court has recognized the final judgment rule as the "dominant rule of federal appellate practice." *In re 1975–2 Grand Jury Investigation of Associated Milk Producers, Inc.*, 566 F.2d 1293, 1297 (5th Cir.), *cert. denied sub nom., Associated Milk Producers, Inc. v. United States*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). The general test for a final decision is one "that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978), quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).[6] "This finality rule is designed to avoid piecemeal trial and appellate litigation and the delays and costs of multiple appeals upon both parties and courts, as well as to provide a clear test so that needless precautionary appeals need not be taken lest substantive rights be lost." *Newpark Shipbuilding & Repair, Inc. v.*

*Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984).

Despite the apparent clarity of the general test, however, finality in the context of appealability has proved to be an elusive concept. It is an "abstruse and infinitely uncertain term," *Will v. United States*, 389 U.S. 90, 108, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (Black, J. concurring); it is "not a clear, one-purpose word; it is slithery, tricky." *United States v. 243.22 Acres of Land*, 129 F.2d 678, 680 (2d Cir.), *cert. denied sub nom., Lambert v. United States*, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558 (1942).

For this reason, the Supreme Court has developed several doctrinal exceptions to the general finality rule that rest on a "practical rather than a technical construction." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). A recent decision in this regard concerned the appealability of a stay order by the federal district court pending resolution of a state court action. *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).[7] The ac-

---

**5.** A review of this issue is timely because this Court has recently expressly encouraged the use of such conditional dismissals in maritime cases. *See, e.g., Zekic v. Reading & Bates Drilling Co.*, 680 F.2d 1107 (5th Cir.1982). Further, as the parties note, this Court has considered appeals in cases involving conditional dismissals without discussing its authority to do so. *E.g. Perusahaan Umum Listrik Negara v. M/V Tel Aviv*, 711 F.2d 1231 (5th Cir.1983); *Fajardo v. Tidewater, Inc.*, 707 F.2d 858 (5th Cir.1983); *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). Other courts have done likewise. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880 (2d Cir.1978); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). In some cases, a review of the jurisdictional predicate under section 1291 has been unnecessary because the dismissal was certified under 28 U.S.C. § 1292(b). *See Bailey v. Dolphin International, Inc.*, 697 F.2d 1268 (5th Cir.1983). We note that we do not base our decision in this case on any implicit finding of jurisdiction in these cases. The cases do suggest, however, that the potential problem regarding appealability is at least not obvious.

**6.** Both the Supreme Court and this Court have recently restated this rule. *Firestone Tire & Rubber Company v. Risjord*, 449 U.S. 368, 373–74, 101 S.Ct. 669, 672–73, 66 L.Ed.2d 571 (1981); *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 401 (5th Cir.1984).

**7.** This Court has indicated that the holding of *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), under section 1291 is limited to abstention or "abstention-like doctrines." *E.E.O.C. v. Neches Butane Products Co.*, 704 F.2d 144, 150 (5th Cir.1983). In *Moses H. Cone*, the Court distinguished "'between a case in which the plaintiff himself *may choose* not to proceed, and a case in which the district court *refuses to allow* the plaintiff to litigate his claim in federal court.'" 460 U.S. at —— n. 11, 103 S.Ct. at 934 n. 11, 74 L.Ed.2d at 776–77 n. 11 (emphasis in original), quoted in *Neches*, 704 F.2d at 150. The present case fits the latter classification. In *Neches*, the Commission was ordered to allow the deposition of a member of the Commission. The Commission refused, and the district court stayed the proceedings pending compliance with its order. As this Court in *Neches* pointed out, the Commission could *choose* to proceed, *i.e.*, by allowing the discovery, thus making the

tion in both courts involved the identical issue of the arbitrability of Mercury Construction Company's claim. This issue was also the only substantive issue in the federal district court. Noting that the state court decision in this regard would be *res judicata* to the stayed federal suit, the Court held that Mercury was thus "effectively out of court." *Id.* 460 U.S. at ——, 103 S.Ct. at 929, 74 L.Ed.2d at 766. Accordingly, the Court held that the stay order amounted to a dismissal of the suit. This Court used similar reasoning in finding appealable the stay of a suit in federal district court pending exhaustion of administrative remedies, noting that the time delay for administrative review effectively put the plaintiffs out of court. *Hines v. D'Artois*, 531 F.2d 726, 731 (5th Cir.1976) ("Effective death should be understood to comprehend any extended state of suspended animation."). *Id.* at 730. *Cf. United States v. Wood*, 295 F.2d 772, 777 (5th Cir.), *cert. denied*, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1961) (holding appealable the district court's denial of a temporary restraining order pending a hearing on an injunction restraining a prosecution for breach of peace designed to intimidate black voters; to do otherwise would be "to preclude review altogether").

Appealability of the orders in this case is even clearer than in *Moses H. Cone Memorial Hospital* or *Hines.* Here, the potential problem with finality is largely in the semantics of the dismissal orders.[8] Because they are conditional, the orders may literally appear to have more typically nonfinal characteristics. And, yet, this Court has held that appealability of an order normally depends on its effect, not merely its language as such. *Le Compte v. Mr. Chip, Inc.,* 528 F.2d 601 (5th Cir.1976); *Linn v. Chivatero,* 714 F.2d 1278 (5th Cir. 1983).[9] The orders in these cases do not stay the actions pending fulfillment of the conditions in the foreign forum. Rather, they dismiss the cases, leaving them open only in the sense that the court has declared its intention to resume jurisdiction in the event the conditions are not met and the appellants refile their claims. The orders do not provide for the court to reexamine the case on the merits of the issues it has determined nor to enter any further order in this regard.[10] The conditions imposed by the district court act as conditions subsequent to the dismissals, not as conditions precedent. These orders are therefore analogous to a dismissal without prejudice. Such dismissals are clearly appeala-

appeal of the stay order moot. By contrast, the appellants Koke and O'Sullivan did not have the option to pursue their suit in federal district court.

**8.** We note a suggestion by this Court in *Bailey* that such conditional orders are nonfinal: "The conditional order might also provide that it can be made final by appellees ...." 697 F.2d at 1280. This statement is dictum, however. More important, this Court in *Bailey* was not addressing the question of finality for the purposes of appeal; it was addressing how the district court might frame a dismissal, the essential validity of which had already been sustained on appeal. Where the *forum non conveniens* dismissal order is yet to be appealed, the just-above referenced *Bailey* formulation should be avoided (at least if there is to be no certification under 28 U.S.C. § 1292(b)). The district court could, of course, in a preliminary ruling indicate that it would enter a conditional dismissal if and when the defendant, within a stated time, agreed in writing to fulfill the conditions specified in the preliminary ruling; and, on the defendant's timely so agreeing, then en-

ter the actual conditional dismissal order (or, if the defendant did not timely so agree, then deny its motion to dismiss). In that event, the latter conditional dismissal order would normally be appealable under section 1291 (assuming the conditions themselves, like at least most of those that are customary in this kind of case, do not involve a continuing retention of jurisdiction by the district court over the action), while the earlier preliminary ruling would not be.

**9.** The language of the orders is important, of course, in interpreting their effect. Had the court in this case, for example, stated that it would dismiss the claims *after* satisfaction of the conditions, a different analysis of the orders would necessarily apply.

**10.** In the event the conditions are not fulfilled and suit is refiled, the court will have to consider the merits of the case under the foreign law it has previously determined as applicable. Further, the court has no jurisdiction to simply *reopen* the case on any aspect; it has dismissed the actions.

ble as final orders. 15 Wright, Miller & Cooper, *Federal Practice and Procedure, Jurisdiction* § 3914 (1976).

We find further support for our determination that the orders in these cases are appealable in cases where the requisite finality has been found lacking. In *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399 (5th Cir.1984), for example, this Court determined that an order of the Benefits Review Board regarding a worker's compensation claim, that determined liability on the claim but remanded the case to an administrative law judge for further proceedings, was not a "final order." [11] This Court expressly rejected the ad hoc balancing approach to determining finality, finding that such approach conflicted with the "values and purposes of the finality rule." 723 F.2d at 405. By contrast, the present case does not involve a balancing process, nor do we perceive any conflict with the purposes and values of the finality rule.

A maritime case involving a stay in a *forum non conveniens* case is also illustrative. In *Anastasiadis v. S.S. Little John*, 339 F.2d 538 (5th Cir.1965), where we held the order nonappealable, the district court had expressly stated that it would enter its order declining jurisdiction and dismissing the cause without prejudice only *after* the running of the period for the stay, thus necessarily retaining jurisdiction. In the present case, the district court has instead entered orders of dismissal and will resume jurisdiction only if the case is refiled. Similarly, in another maritime case, *Constructora Subacuatica Diavaz v. M/V Hiryu*, 718 F.2d 690 (5th Cir.1983), this Court found nonappealable the district court's dismissal of writs of attachment, garnishment, and seizure *in rem* of a vessel. The dismissal of the writs was conditioned on several factors, including the posting of a security bond in Oslo, Norway, with the vessel remaining in the marshal's custody

until this condition was satisfied. In determining that jurisdiction was lacking, this Court noted that a judgment vacating writs of attachment, garnishment, and seizure is not considered final because it does not dispose of the entire case on the merits, but may be final as a collateral order under the exception described in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This Court further found that the record was inadequate to fully consider the order under the *Cohen* doctrine. In *Constructora Subacuatica Diavaz*, the district court would not dissolve the attachment until the posting of a bond; thus, the judgment was not final in its effect. In the present case, there is no such continuing pendency of the action and related involvement of the district court.

Finally, we note two cases from other Circuits involving a conditional dismissal. In *Navarro v. District Director of U.S. Immigration and Naturalization Service*, 539 F.2d 611 (7th Cir.1976), the Seventh Circuit found nonappealable an order by the district court directing the defendant to file a certified copy of the administrative record within thirty days and indicating that summary judgment of dismissal "will be granted" *if* the copy when filed conformed to certain representations by the defendant. Similarly, the District of Columbia Circuit determined the judgment of the district court was not final in a case involving a release of documents under the Freedom of Information Act. *Green v. Department of Commerce*, 618 F.2d 836 (D.C.Cir.1980) (the documents would not be released until the district court reviewed any objections by third parties regarding potential harmful disclosures). In both these cases, unlike the conditional dismissals in these *forum non conveniens* cases, the district court contemplated further action in the then pending suits.

---

11. While the appealability question was decided under section 921(c) rather than directly under section 1291, as this Court noted, the "required finality for reviewability of an order of the Board follows, for the same reasons of policy, the contours of the finality-requirement under 28 U.S.C. § 1291 for appealability of decisions of the district courts." *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d at 400.

**218**

■ We find that the orders before us are final under section 1291 for several reasons. First, the orders did not operate as a stay, thus allowing an opportunity for further action by the district court, but are rather essentially analogous to a dismissal without prejudice. The conditions protect the appellants merely in the sense that they may refile their cases in federal district court, without penalty, if the defendant balks in the foreign forum. Second, the orders put the appellants effectively out of federal court, leaving them no option to continue in that forum. Third, to refuse an appeal at this point would probably be to preclude entirely review of the district court's decisions because of the *res judicata* effects of any foreign judgment. Finally, allowing appeal of such conditional dismissals does not conflict with the "values and purposes of the finality rule," nor present a danger of "piecemeal trial and appellate litigation." We turn, therefore, to a review of the merits of the appellants' claims.

### III.

### STANDARD OF REVIEW

■ Before dismissing a case for *forum non conveniens*, a court must first determine whether American or foreign law governs the claim. *Bailey v. Dolphin International, Inc.*, 697 F.2d 1268, 1274 (5th Cir.1983). This Court has held that, if American law applies, a federal court should retain jurisdiction. *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 315 (5th Cir. 1980), *cert. denied sub nom., Valmas Brothers Shipping, S.A. v. Fisher*, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). *But see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260, 102 S.Ct. 252, 268, 70 L.Ed.2d 419 (1981). If foreign law applies, however, the court may dismiss if there is a more convenient forum available. *De Oliveira v. Delta Marine Drilling Co.*, 707 F.2d 843, 845 (5th Cir.1983). While the choice of law is subject to our *de novo* review, the court's dismissal for *forum non conveniens* will be disturbed "only if

its action constitutes a clear abuse of discretion." *Bailey*, 697 F.2d at 1274.

### IV.

### CHOICE OF LAW

Appellants make two contentions regarding the choice of law determination by the district court: (1) that the court erred in not finding that there were substantial American contacts to justify the application of American law; and (2) that the court erred in applying the analysis of *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015 (5th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). Because of its importance in the choice of law context, we address first the applicability of *Chiazor*.

In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court identified eight factors that a court should use in deciding a choice of law issue: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured party; (4) allegiance of the defendant shipowner; (5) place of the contract; (6) inaccessability of the foreign forum; (7) law of the forum; and (8) shipowner's base of operations.

■ It is undisputed that the vessel in this case flies the American flag. As the appellants assert, this fact alone can be paramount, compelling a finding of American law. *Lauritzen*, 345 U.S. at 585, 73 S.Ct. at 929. The rationale for this result rests "on the pragmatic basis that there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns [the ship]." *Id.* at 585, 73 S.Ct. at 930. The base of operations of the defendant, a disputed issue in this case, is also a significant factor in the choice of law context; an American base of operations can be sufficient to support the application of American law. *See Rhoditis* and *Fisher*.

But the test enunciated in *Lauritzen* is not intended to be mechanistic. Thus, while these two factors alone, if present, would usually require application of American law, this Court has determined that factors substantial in one context may be of lesser importance in another. *Chiazor v. Transworld Drilling Company, Ltd.*, 648 F.2d at 1018. *Chiazor* involved a Nigerian seaman who died from injuries he received while working on a submersible drilling rig off the coast of Nigeria. In affirming the lower court's dismissal of the appellant's action, this Court distinguished for choice of law purposes between "a true maritime vessel, one plying the seas as an integral part of the shipping industry" and a nontraditional maritime vessel, the submersible drilling rig. 648 F.2d at 1018–19. Under the *Chiazor* analysis, factors such as the place of the wrong, the allegiance or domicile of the injured, and the place of the contract take on greater significance. *Bailey*, 697 F.2d at 1275. This Court in *Chiazor* determined that under the facts before it a United States base of operations for the defendant would not be the "sole controlling factor." Similarly, the Ninth Circuit held that the law of the flag should not be accorded controlling weight in a case also involving the offshore drilling context. *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir.1980), *cert. denied sub nom.*, *Romilly v. Amoco Trinidad Oil Co.*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981).

■ In making the choice of law determination in this case, the district court expressly relied on *Chiazor*. The appellants question this reliance on two grounds. First, they argue that *Chiazor* applies only to vessels that maintain a stationary position and thus cannot encompass the Sedco/Phillips SS because it can move under its own power and thus is a more traditional, blue-water type of vessel.[12] We agree with the district court's resolution. While the Sedco/Phillips SS certainly has greater

mobility than a fixed rig which may remain in place for several years, it was not, and was not designed to function as, a vessel "plying the seas" in the traditional sense. It is a semi-submersible platform that rests on columns attached to flotation chambers. Its movements occur within a specific and limited geographic area. Further, when travel over long distances is required, it is apparently towed to a location. Its functions are also limited in that it works solely as a long-term, on-site service facility for the fixed oil field production and pipeline complex in the North Sea. It was uniquely designed for localized, on-site oil field support service, to be principally performed when stationary, and it in fact functioned in that manner and did so before, at the time of, and after the injuries in question. The vessel in *De Oliveira*, in which this Court applied the *Chiazor* analysis, served as a tender vessel for oil drilling facilities. Because of its highly specialized design and limited mobility, the Sedco/Phillips SS is plainly closer to a "fixed" rig than was the tender vessel involved in *De Oliveira*.

■ Second, however, the appellants argue that *Chiazor* can apply only where: (1) the vessel has maintained a stationary position in territorial waters of a single nation; and (2) that single nation in whose water the vessel has remained has all other significant contacts with the transaction other than American ownership or registration. But this argument has been foreclosed by *Bailey* in which this Court noted: "It is certainly true that where the factors emphasized in *Chiazor* all coincide in one country, the choice of law determination points strongly to the application of that country's law, but it does not follow that the application of American law is required, as if by default, where these factors are spread among several other foreign countries, and the only contact with the United States remains ultimate American owner-

---

**12.** The appellants urge this Court to find error based on their perception that the district court categorized the Sedco/Phillips SS as a "fixed rig." It is clear, however, that the district court did not do so. Rather, it determined that the alleged accidents occurred in the "context of 'fixed rig' operations."

ship or control of the business ventures...." 697 F.2d at 1277–78.

■ We now turn, therefore, to a review of the choice of law factors. The appellants argue that there are substantial contacts between the accidents and the United States and American law should therefore apply. We disagree. The appellants in these consolidated cases are both British citizens who applied for employment in Scotland and were employed in Europe or Africa by Swiss and Scottish based companies; neither has ever lived in or even been present within the United States. Their injuries occurred in the North Sea off the coast of Norway,[13] the primary location of the Sedco/Phillips SS since 1977. Thus, unlike a case in which a blue-water vessel is involved, *see, e.g., Diaz v. Humboldt,* 722 F.2d 1216 (5th Cir.1984), the place of the wrongful act for the appellants was not merely fortuitous. As the Court noted in *Phillips,* the rationale for giving preeminence to the law of the flag simply does not apply in a case such as this. 632 F.2d at 87. In addition, the appellants received medical treatment for their injuries in Norway, the United Kingdom, and in the case of O'Sullivan, Malaga, Spain, where he currently resides. Further, even if we accept the appellants' contention that the ultimate allegiance and base of operations of the defendants is the United States, both because the owner of the vessel is an American corporation and because the parent corporations in the case are American, that factor is not controlling in these circumstances. *Chiazor,* 648 F.2d at 1019. In *Zekic v. Reading & Bates Drilling Co.,* 536 F.Supp. 23 (E.D.La.1981), *modified,* 680 F.2d 1107 (5th Cir.1982), this Court held

that Italian rather than American law applied although the vessel in that case flew the American flag and both the vessel owner and the immediate employer of the injured seaman were American. As in the present case, no other significant contacts were American. Further, the focus in cases involving foreign accidents on localized vessels, not of the traditional blue-water variety, has been the place of the day-to-day operating decisions. *See Chiazor,* 648 F.2d at 1019. Here, the record clearly reflects that day-to-day operating decisions regarding the vessel and diving activities were made on board the vessel and in Norway. Finally, we find that Norway had a substantial interest in regulating oil drilling and related activity off its coast. *See Zekic,* 536 F.Supp. at 25. Thus, we hold that the district court properly determined that there were not substantial interests requiring the application of American law. Both Norway and the United Kingdom have more substantial contacts with the appellants' claims.

## V.

### FORUM NON CONVENIENS

Before dismissing for *forum non conveniens* in a case involving foreign law the court should consider the various private and public interests involved. *Chiazor,* 648 F.2d at 1019. The appellants in this case do not seek to have the federal courts retain jurisdiction of this case should foreign law apply as we have found. For this reason, we address the district court's decision in this respect only to note that we do not discern any abuse of discretion.

AFFIRMED.

---

**13.** Appellants cite *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed.2d 1254 (1953), for the proposition that, because the injury occurred on board an American flagged vessel, it occurred in the United States. While *Lauritzen* does refer to the "floating part of the flag-state," 345 U.S. at 585, 73 S.Ct. at 929, it does not adopt this theory and our decisions implicitly reject it. *See Zekic v. Reading & Bates Drilling Co.,* 536 F.Supp. 23 (E.D.La.1981), *modified,* 680 F.2d 1107 (5th Cir. 1982). The appellants further contend that the American nationality of the vessel is to be at-

tributed to all the crew members, again citing *Lauritzen.* But as the Court noted, "each nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support." 345 U.S. at 586, 73 S.Ct. at 930. In *Lauritzen,* it was not necessary for the Court to weigh the seaman's nationality against that of the ship; the two coincided. Appellants wish us to employ a fiction to overcome the legitimate interests of another nation; we decline.