Castelo RIVERA

v.

OFFSHORE CREWS, INC., et al.

Civ. A. No. 83-4187.

United States District Court,
E.D. Louisiana.

Sept. 27, 1984.

John Paul Massicot, New Orleans, La.,
for plaintiff.

W.K. Christovich and Michael Christovich, New Orleans, La., for defendant Offshore Crews.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on motion of defendant, Offshore Crews, Inc., to dismiss plaintiff's claims on the grounds that this Court lacks subject matter jurisdiction or, in the alternative, on the grounds of *forum non conveniens*. Considering the memoranda filed by the parties, the oral argument, the record, and the applicable law, the Court denies defendant's Motion to Dismiss and/or Summary Judgment.

Defendant's first contention, that the Court lacks subject matter jurisdiction, is misplaced. Because plaintiff alleges that he sustained injuries on navigable waters in connection with the navigation of defendant's vessel, the M/V TROPIC SEAHORSE, admiralty jurisdiction is present. *Sosa v. M/V LAGO IZABAL*, 736 F.2d 1028, 1031 (5th Cir.1984).

Defendant's second contention, that this Court should dismiss plaintiff's complaint on the ground of *forum non conveniens*, requires consideration. In order to determine whether dismissal is proper for *forum non conveniens*, the Court must first determine whether American or foreign law is applicable. *Diaz v. Humbolt*, 722 F.2d 1216, 1217, (5th Cir.1984). If it is determined that United States law is applicable, the court "should entertain the suit"

and not dismiss the action on the basis of *forum non conveniens. Id.* Admiralty choice of law is determined by a list of factors, set forth in the Supreme Court cases of *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). These factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegience of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

In the instant case, the parties agree that the M/V TROPIC SEAHORSE was an American flag vessel. This "fact alone can be paramount, compelling a finding of American law." *Koke v. Phillips Petroleum Co.,* 730 F.2d 211, 218 (5th Cir.1984) (citing *Lauritzen,* 345 U.S. at 585, 73 S.Ct. at 929). However, because this case involves offshore oil and gas exploration and production activities, other factors, such as the place of the wrong, the allegiance or domicile of the injured worker, and the place of the contract take on a great significance. *See Chiazor v. Transworld Drilling Company, Ltd.,* 648 F.2d 1015 (5th

Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

In the instant case, the place of the wrong was Nacital, Mexico, the plaintiff's domicile and/or country of citizenship was Mexico or Honduras, and the place of contract was the United States. Mexican, and/or foreign forums are open to the plaintiff.

The Court also finds that the United States is the base of operations of defendant, Offshore Crews, Inc. Plaintiff was hired in the United States. He worked on an ordinary crew boat, not a special purpose vessel, that was owned directly by a United States corporation without the interposition of a foreign subsidiary.[1] Plaintiff's employment contract called for payment in United States dollars, and made some reference to the application of United States' general maritime law. Prior to employment plaintiff received a physical from defendant's physicians in the United States. Employment records and payroll originated in and were maintained in the United States. After plaintiff was injured, and upon defendant's request, he received medical treatment from defendant's physicians here in the United States.[2] The charter agreement under which the TROPIC SEAHORSE[3] was operating at the time of

---

1. The TROPIC SEAHORSE was owned by Seahorse Inc., a Louisiana corporation, and, at the time of the alleged accident, was under charter to Construcciones Maritimas Y Terrestres Altamira, S.A. ("Comater"), a Mexican corporation. Plaintiff was employed directly by a U.S. corporation, and paragraph 7.2 of the charter agreement between the parties provided:

   neither the Owner [Seahorse] nor the Owner's ... employees, nor the crew of the Vessel [TROPIC SEAHORSE] are servants, agents, or employees of Charterer [Comater]. The performance of the Work and the operations, navigation, management and control of the Vessel shall be subject to Charterer's approval, but the method and manner of conducting same shall at all times be under Owner's control and direction. Charterer being interested only in the completed performance of the Work and compliance with this Agreement. *Id.* ¶ 7.2

2. The location of medical attention is a factor to be considered by the Court in its choice of law determination. *See Koke,* 730 F.2d at 220.

3. The Court is cognizant of the fact that the vessel in question is not one normally "plying the waters of the world;" neither, however, is it a special purpose vessel permanently or semi-permanently stationed in one offshore location. The TROPIC SEAHORSE is a 176 foot, 2220 horse power crew boat with a crew of eight. *See* Exhibits A & C to Agreement between Comater and Seahorse, Inc., (May 10, 1981). Further, plaintiff's contract provided that he was to be assigned to any vessel (wherever needed) in the waters of, or en-route to Mexico, and that he could be reassigned upon 24 hour notice to *another vessel and area of assignment.* Marine Work Agreement between Castelo Rivera and Offshore Crews, Inc., (Sept. 25, 1980) ¶ 3. "Assignment" (emphasis added). This language points out that, unlike cases of special purpose vessels, plaintiff's injury in Mexico on the TROPIC SEAHORSE is to some degree fortuitous.

plaintiff's alleged injury points out that the TROPIC SEAHORSE also had operational contacts with the United States. The vessel was built in the United States but, more importantly, the agreement between the parties selected Morgan City, Louisiana as the TROPIC SEAHORSE's "designated port"—the port at which the vessel was to be delivered at the beginning and end of the charter. Thus, while some day-to-day operations no doubt occurred in Mexico, the company's base of operations was the United States.

The Court notes that the weight to be accorded to any of the eight factors in *Lauritzen* and *Rhoditis* must be considered in the totality of the circumstances of the particular case. The substantial and continuing contacts set out herein indicate the base of operations was in the United States, and outweighs any interest which might be served by litigating this case in Mexican courts. American law being applicable, dismissal for *forum non conveniens* is not proper. *Chiazor*, 648 F.2d at 1018. Accordingly, defendant's motion is DE-NIED.[4]

---

**4.** Unlike other decisions of this Court (*Fajardo v. Tidewater, Inc.,* 707 F.2d 858 (5th Cir.1983) (affirming Schwartz, J. on the basis of the District Court's opinion) (per curiam)) and Circuit (*See, e.g., De Oliveira v. Delta Marine Drilling Co.,* 707 F.2d 843 (5th Cir.1983)), transferring or dismissing claims of foreign seamen injured in offshore oil and gas exploration and production in territorial waters of other nations, this case presents several significant factual distinctions.